UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KONINKLIJKE PHILIPS ELECTRONICS N.V. and U.S. PHILIPS CORPORATION,<br><br>    Plaintiffs,<br><br>v.<br><br>THE ADS GROUP fka ADVANCED DUPLICATION SERVICES LLC; AMERICAN MEDIA INTERNATIONAL, LTD.; CARBONITE INC.; THE COMVEST GROUP; CONCORD RECORDS, INC.; CONCORD MUSIC GROUP, INC; EVA-TONE, INC.; HAL LEONARD CORP.; HUDSON VALLEY CAPITAL PARTNERS, INC.; INOVERIS LLC; INTUIT INC.; METATEC INTERNATIONAL, INC.; MTI ACQUISITION LLC aka MTI ACQUISITION CORP.; MUSIC CITY OPTICAL MEDIA, INC.; ZOMAX INCORPORATED; MICHAEL F. HARDWICK, an individual; ARUN KHURANA, an individual; JEAN A. LAGOTTE JR., an individual; JOHN EDGAR MOLL, and individual, JOHN STEVEN MOLL, an individual; DAVID A. SILVON, an individual; and John Does No. 1 through 100,<br><br>    Defendants. | Case No. 08-cv-4068 (CLB) |

**KONINKLIJKE PHILIPS ELECTRONICS N.V. AND U.S. PHILIPS CORPORATION'S MEMORANDUM IN OPPOSITION TO CARBONITE AND HAL LEONARD'S JOINT MOTION TO DISMISS PATENT INFRINGEMENT CLAIMS AGAINST CUSTOMERS**

    Plaintiffs Koninklijke Philips Electronics N.V. and U.S. Philips Corporation (collectively "Philips") hereby oppose Carbonite Inc.'s and Hal Leonard Corp.'s (collectively "Customers") Joint Motion to Dismiss Patent Infringement Claims Against Customers (Document No. 39).

1

Because Defendant Intuit, Inc. withdrew from the Joint Motion (Document No. 45), Philips' Opposition does not address that Defendant's motion to dismiss.

I.  SUMMARY

Customers contend that, as a matter of law, they cannot be liable for patent infringement because Philips' patent rights were exhausted when the Customers purchased the infringing CDs from a licensed manufacturer. Customers' analysis, however, suffers from a critical flaw, namely, their improper assumption that they purchase **authorized** CDs from Philips' licensees. Nothing could be further from the truth, and such an assumption is contrary to Philips' First Amended Complaint, which specifically alleges why such CD sales are **not** authorized. The mere fact that Philips has entered into valid license agreements with CD replicators or manufacturers does not establish that any sale by such licensees is automatically an authorized sale. To the contrary, where, as here, a licensee fails to perform under the license (by not paying royalties), any CD sales by the licensee are not authorized. Because such CD sales are not authorized, there can be no exhaustion of Philips' patent rights as a matter of law. Thus, Customers' Joint Motion to Dismiss must fail.

I.  ARGUMENT

A.  Applicable Standard - Rule 12(b)(6) Motions

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the material allegations of a Complaint are taken as true, and a Complaint is liberally construed in plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421-22, 89 S. Ct. 1843, 1849 (1969), *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (explaining that courts must consider motions to dismiss by "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor."). Motions to dismiss under Rule 12(b)(6) are rarely granted and are generally viewed with disfavor. *See Patane v. Clark*, 508 F.3d 106, 116 (2d Cir. 2007).

Indeed, a well-pleaded Complaint may proceed even if it appears that a recovery is very remote and unlikely. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Whether the plaintiff may ultimately prevail is irrelevant for purposes of deciding a motion to dismiss. *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996).

    **B.    The Patent Exhaustion Doctrine Does Not Prevent Philips From Asserting Its Patent Rights Against the Customers Because the CD Sales Were Not Authorized**

Because Customers do not purchase authorized CDs from Philips' licensees, they are simply wrong that the doctrine of patent exhaustion precludes Philips from enforcing its patent rights against them. Indeed, it is well-established that patent "[e]xhaustion is triggered only by a sale authorized by the patent holder." *Quanta Computer Inc. v. LG, Electronics, Inc.*, 128 S. Ct. 2109, 2121 (US 2008). Customers do not and cannot contest this point of law. Instead, they point to the mere existence of a valid license agreement between Philips and manufacturers, such as Advanced Duplication Services LLC ("ADS"), Zomax Incorporated ("Zomax"), and Inoveris LLC ("Inoveris"), and suggest that any CD purchases from those licensees are automatically authorized. This argument is flawed. Not only is it inconsistent with fundamental legal principles, but it runs contrary to Philips' factual allegations in the First Amended Complaint.

It is hornbook law that the mere existence of a license does not provide a complete defense for purposes of infringement or patent exhaustion. *General Talking Pictures Corp. v Western Elec. Co.*, 305 U.S. 124, 126-27 (1938). Where a licensee makes and sells a patented article in violation of the terms of its license, "the effect is precisely the same as if no license whatsoever had been granted," and the patentee can sue both the licensee and the purchaser for infringement of the patent. *Id.* at 127. Thus, the issue of whether patent exhaustion attaches turns in part on whether the activity or sales are authorized under the license, not on the mere existence of a license. *See Quanta*, 128 S. Ct. at 2122. Here, Philips clearly alleges in its First

3

Amended Complaint that Customers' purchases of CDs made or sold by Philip's licensees, who are in material breach of their license agreements, are not authorized.

In the First Amended Complaint, Philips alleges that Customers ADS, Zomax, Inoveris, and others were granted a license to make and sell CDs falling within the claims of U.S. Patent No. 5,068,846. (First Amended Complaint ("FAC") ¶¶ 54, 57, 59, 61, 68). However, Customers ignore Philips' express allegations that any such licensed right to make and sell CDs is contingent upon the payment of royalties to Philips. (FAC ¶¶ 75-78, 96). Customers also disregard Philips' allegation that the Defendant licensees have been making and selling CDs covered by the '846 Patent without paying the required royalties. (FAC ¶¶ 87-90, 95-97). Thus, the CD sales that Customers cling to are not authorized.

To suggest otherwise — as Customers do — vitiates a basic licensing principle: a patent owner who licenses sales of a patented device rightfully expects to receive the value of the patent in exchange for the license. Because Philips' licensees have failed to pay the necessary royalties in conjunction with their licenses — factual allegations that must be accepted as true for the purposes of this motion, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) — any downstream CD sales from the Defendant licensees are not authorized. Thus, Customers cannot rely on these sales to invoke patent exhaustion.

Customers' reliance on *Quanta* is misplaced. In fact, nothing in *Quanta* supports Customers' position that patent exhaustion applies here. The Supreme Court's finding of patent exhaustion in *Quanta* was based on the fact that there was an authorized sale from LG's licensee, Intel, to Quanta, the defendant. *Quanta*, 128 S. Ct. at 2121-22. There was no allegation that Intel had failed to pay royalties to LG, and there certainly was no finding that Intel's sales of the licensed products were unauthorized. Thus, *Quanta's* application of patent exhaustion was

4

limited to **authorized** downstream sales.  Unlike *Quanta*, this case concerns unauthorized downstream sales.  Therefore, *Quanta* supports Philips' position that Customers' motion should be denied.  *Quanta* expressly recognizes that unauthorized sales — such as those present here — do not trigger patent exhaustion.  *Id*. at 2122.

Moreover, the Supreme Court's analysis in *Quanta* contradicts Customers' broad allegation that the mere existence of a license between Philips and ADS, Zomax, or Inoveris establishes authorized sales.  If Customers were correct, the Supreme Court would have had no reason to analyze the license agreements at issue in *Quanta*.  Instead, the Court would have ended its inquiry and based its finding of exhaustion on the mere fact that the plaintiff had licensed its patent portfolio to another party.  That, of course, is not how *Quanta* played out.  *Quanta* specifically inquired as to whether the sale under the license was authorized.  *Id*.  When taken as true as the law requires, Philips' allegations establish that the downstream CD sales from the Defendant licensees are unauthorized, and that as the patentee, Philips can sue both the licensees and the Customers for infringement of its patent.

II.   **CONCLUSION**

For these reasons, Philips respectfully urges this Court to deny Customers' Joint Motion to Dismiss Patent Infringement Claims Against Customers based on Fed. R. Civ. P. 12(b)(6).

Date:  July 14, 2008

*/s/ Samuel C. Bass*
Vince P. Kovalick     (*pro hac vice*)
John F. Hornick       (*pro hac vice*)
Samuel C. Bass        (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
Tel: (202) 408-4000
Fax: (202) 408-4400

Edward D. Johnson
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, California 94306-2112
Tel: (650) 331-2000
Fax: (650) 331-2060

Christopher J. Houpt
MAYER BROWN LLP
1675 Broadway
New York, New York 10019
Tel: (212) 506-2380
Fax: (212) 849-5830

*Attorneys for Plaintiffs*
*Koninklijke Philips Electronics N.V. and*
*U.S. Philips Corporation*

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Samuel C. Bass*