UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KONINKLIJKE PHILIPS ELECTRONICS N.V. and U.S. PHILIPS CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>THE ADS GROUP fka ADVANCED DUPLICATION SERVICES LLC; AMERICAN MEDIA INTERNATIONAL, LTD.; CARBONITE INC.; THE COMVEST GROUP; CONCORD RECORDS, INC.; CONCORD MUSIC GROUP, INC; EVA-TONE, INC.; HAL LEONARD CORP.; HUDSON VALLEY CAPITAL PARTNERS, INC.; INOVERIS LLC; INTUIT INC.; METATEC INTERNATIONAL, INC.; MTI ACQUISITION LLC aka MTI ACQUISITION CORP.; MUSIC CITY OPTICAL MEDIA, INC.; ZOMAX INCORPORATED; MICHAEL F. HARDWICK, an individual; ARUN KHURANA, an individual; JEAN A. LAGOTTE JR., an individual; JOHN EDGAR MOLL, and individual, JOHN STEVEN MOLL, an individual; DAVID A. SILVON, an individual; and John Does No. 1 through 100,<br><br>Defendants. | Civil Action No. 08-CV-4068 (CS) (GAY)<br><br>ECF Case |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
CONCORD RECORDS, INC.'S AND CONCORD MUSIC GROUP, INC.'S
MOTION TO DISMISS COUNT II OF FIRST AMENDED COMPLAINT**

In response to the First Amended Complaint filed by Plaintiffs Koninklijke Philips Electronics N.V. and U.S. Philips Corporation (collectively, "Philips"), Defendants Concord Records, Inc. and Concord Music Group, Inc. (collectively, "Concord") hereby jointly submit this Memorandum of Law in Support of their Motion to Dismiss Count II of Philips's First

20205366.1

Amended Complaint for failure to state a claim upon which relief can be granted against them.[1] Fed. R. Civ. P. 12(b)(6).

Count II, asserting claims for patent infringement, cannot be maintained against Concord as a matter of law because the sales to Concord identified in the First Amended Complaint were authorized by Philips pursuant to a license granted by Philips to Defendant Music City Optical Media, Inc. ("Music City").[2]  As alleged in Philips's First Amended Complaint, this license became effective on July 1, 2002, is currently "valid and subsisting," and has not been terminated ("License Agreement," a copy of which is attached as Exhibit M to Philips's First Amended Complaint).  (First Amended Complaint at ¶¶ 58, 128 and Exhibit M, Dkt. 20). Because the License Agreement authorized the sales to Concord, Philips's patent rights were exhausted notwithstanding Philips's allegation that Music City subsequently failed to live up to certain post-sale contractual obligations.

I. BACKGROUND

Philips purports to be the owner by assignment of all right, title, and interest in U.S. patent No. 5,068,846, entitled "Reflective, Optical Record Carrier" ("'846 patent").[3]  (First Amended Complaint at ¶ 52, Dkt. 20).  The '846 patent includes four claims directed to a "recording medium." Philips alleges that various common CD-Discs fall within the scope of the claims of the '846 patent. (First Amended Complaint at ¶¶ 76, 83, 85, and 95, Dkt. 20).

Pursuant to a License Agreement effective July 1, 2002, Music City became authorized to make and sell CD-Discs covered by the claims of the '846 patent, including for the territory of the United States. (First Amended Complaint at ¶ 58, Dkt. 20). As noted above, Philips alleges in the First Amended Complaint that the License Agreement is "valid and subsisting."  (First

---

[1] Philips granted Concord an extension of time to respond to the First Amended Complaint such that the response was due on August 13, 2008.
[2] The breach of contract claim (Count I) is asserted against all defendants, except Concord and the other parties identified as "Customers" in paragraph 23 of Philips's First Amended Complaint.  The constructive trust claim (Count III) is asserted only against defendants Eva-tone, Inc. and Music City Optical Media, Inc.  Thus, Count II is the only claim asserted against Concord.
[3] For purposes of this motion, Concord describes factual allegations set forth by Philips in the First Amended Complaint, but does not accept them as true, accurate or established.

Amended Complaint at ¶ 128, Dkt. 20).

Paragraph 58 of Philips's First Amended Complaint alleges:

> Effective July 1, 2002, Philips and Music City entered into a "CD Disc Patent License Agreement" whereby Philips granted Music City worldwide rights under certain conditions related to CD Systems, including for the territory of the United States, its territories, and possessions (the "Music City Agreement") (Exhibit M). Effective September 17, 2002, November 24, 2002, and November 24, 2003, Philips entered into "Workout Agreements with Music City, and under the provisions thereof Music City agreed to a payment schedule for past due amounts owed by Music City to Philips (Exhibit N, O, P).

(First Amended Complaint at ¶ 58, Dkt. 20).

The License Agreement includes the following grant of rights:

> 2.01 For the term of this Agreement, Philips hereby grants to Licensee a non-exclusive, non-transferable license under the Licensed Patents selected by Licensee pursuant to Article 1.16 to manufacture licensed Products within the Territory in accordance with the relevant CD Standard Specifications and to sell or otherwise dispose of Licensed Products so manufactured in all countries of the world.

(First Amended Complaint, Exhibit M at p. 5, Dkt. 20). Philips alleges that the '846 patent is among the patents licensed under article 2.01 of the License Agreement. (First Amended Complaint at ¶¶ 84-85, Dkt. 20).

The License Agreement provides for *post-sale* reporting and royalty payments:

> 5.03 Within 30 days following 31 March, 30 June, 30 September and 31 December of each year during the term of this Agreement, Licensee shall submit to Philips ... a written statement ... setting forth with respect to the preceding quarterly period ... (1) the quantities of CD-Disks manufactured by Licensee ... (3) ... (a) the quantities of CD-Discs sold or otherwise disposed of ... (4) a computation of the royalties due under this Agreement.
>
> Licensee shall pay the royalties due to Philips within 30 days after the end of each quarterly period, in such US Dollars.

(First Amended Complaint, Exhibit M at 10, Dkt. 20).

The License Agreement specifies a term of ten (10) years, but further includes an early

termination provision:

> 12.01  This Agreement shall remain in force for a period of 10 years from the Effective Date unless terminated earlier in accordance with the provisions in Article 12.
>
> 12.02  ... each party may terminate this Agreement at any time by means of written notice to the other party in the event that the other party fails to perform any obligation under this Agreement and such failure is not remedied within 30 days after receipt of a notice specifying the nature of such failure and requiring it to be remedied. ...

(First Amended Complaint, Exhibit M at 15, Dkt. 20).  As noted above, Philips alleges in the First Amended Complaint that the License Agreement has not been terminated.  (First Amended Complaint at ¶ 128, Dkt. 20).

In the First Amended Complaint, Philips alleges that Concord purchased CD-Discs from Defendant Music City and further alleges that subsequent sales of those CD-Discs by Concord infringed the '846 patent:

> 120.  Concord has purchased from Music City unlicensed CD-Discs that are covered by the '846 patent.
>
> 121.  Concord uses, sells, and/or offers to sell CD-Discs in the U.S. purchased from Music City and covered by the '846 patent without a license from Philips and/or without paying royalties to Philips.

(First Amended Complaint at ¶¶ 120-21, Dkt. 20).

Finally, in the First Amended Complaint, Philips alleges that Music City has wrongfully retained funds that should have been paid to Philips as royalties due under the License Agreement.  (First Amended Complaint at ¶¶ 123, 155, 157, 159, Dkt. 20).

## II.   ARGUMENT

### A.   The Applicable Standard

Pursuant to Rule 12(b)(6), a court should dismiss a claim if the pleading party "can prove no set of facts, consistent with its complaint, that would entitle it to relief." *Electronics Communications Corp. v. Toshiba Am. Consumer Prods.,* 129 F.3d 240, 243 (2d Cir. 1997).  As the Court of Appeals for the Second Circuit recently explained, in considering a motion to

dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, a court must accept "all factual allegations in the complaint and [draw] all reasonable inferences in the plaintiff's favor." *ATSI Communs. Inc. v. Shaar Fund, Ltd,* 493 F.3d 87, 98 (2d Cir. 2007). However, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007). Ultimately, a court should dismiss a complaint for failure to state a claim when the complaint fails to include "plausible grounds" for relief. *Id*.

### B. Philips's Patent Infringement Claim Against Concord Should Be Dismissed Because The Sale of The CD-Discs From Music City to Concord Exhausted Philips's Patent Rights

As stated above, in the First Amended Complaint, Philips alleges that Concord purchased CD-Discs from Defendant Music City and further alleges that subsequent sales of those CD-Discs by Concord infringed the '846 patent. (First Amended Complaint at ¶¶ 120-21, Dkt. 20). Philips has failed to state plausible grounds for relief on its patent infringement claims against Concord because the sale of the CD-Discs from Music City to Concord exhausted Philips's patent rights.

According to the First Amended Complaint, a "valid and subsisting" license agreement exists between Philips and Music City with respect to the patent-in-suit. (*See* First Amended Complaint, ¶ 128, Dkt. 20). According to Philips's First Amended Complaint, this license dates back to July 1, 2002 and has not been terminated by either party. (First Amended Complaint, ¶ 128). As such, Music City has been and remains one of Philips's authorized vendors under the patent despite Philips's allegations that Music City has breached post-sale contractual obligations with Philips. Under the terms of the License Agreement, at all times relevant to Philips's First Amended Complaint, Music City was authorized by Philips to make and sell CD-Discs to Concord and others. Because there is no infringement allegation directed to Concord that is not related to CD-Discs purchased from Music City during the term of the License Agreement, Philips has failed to state plausible grounds for relief.

As recently stated by the Supreme Court, "[t]he longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates all patent rights to that item." *Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. __, 128 S. Ct. 2109, 2115 (June 9, 2008). The exhaustion doctrine applies with equal force to sales by the patentee's licensees: "The patent owner's rights with respect to the product end with its sale, . . . and a purchaser of such a product may use or resell the product free of the patent. . . . This longstanding principle applies similarly to a sale of a patented product manufactured by a licensee acting within the scope of its license." *Intel Corp. v. ULSI Corp.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993) (citations omitted), *cert. denied*, 510 U.S. 1092 (1994); s*ee also Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 826 (Fed. Cir. 1991)(if a license agreement gives an accused infringer's manufacturing supplier authority to make the accused product, "the purchaser of those products from [the supplier] would be free to use and/or resell the products. Such further use and sale is beyond the reach of the patent statutes.").

In *Quanta,* the patent owner, LG Electronics, Inc. ("LGE"), licensed a patent portfolio to Intel Corporation ("Intel"), which authorized Intel to manufacture and sell products (microprocessors and chipsets) that use the LGE patents. *Quanta*, 128 S. Ct. at 2114. Quanta was a customer of Intel who purchased the authorized products form Intel, and then combined them with non-Intel components to make computers. *Id*. LGE subsequently sued Quanta for patent infringement. In a unanimous opinion, the Supreme Court held that LGE's patent rights were exhausted when it authorized Intel to sell the products which embody the LGE patents, whose only reasonable and intended use was to practice the patents.[4] *Id*. at 2119. The Court held that the sale of the patented product by Intel to Quanta was an authorized sale and that "Intel's authorized sale to Quanta thus took its products outside the scope of the patent

---

[4] The Court noted that, notwithstanding the requirement in the agreement to notify its customers that combinations of licensed products with non-Intel components to make new products were not licensed by LGE, there was nothing in the LGE/Intel agreement which restricted Intel's right to sell the patented products. *Id*. at 2121. The Court also found that it was irrelevant that LGE expressly disclaimed any license to Intel's customers because "exhaustion turns only on Intel's own license to sell products practicing the LGE Patents." *Id*. at 2122. In other words, Intel's customers did not need a license because the exhaustion analysis stopped at Intel and LGE's patent rights already had been exhausted.

monopoly, and as a result, LGE can no longer assert its patent rights against Quanta." *Id.* at 2122.

The same result follows here and bars Philips's patent infringement claims against Concord. Specifically, Philips's allegations in paragraph 128 of the First Amended Complaint that the License Agreement is "valid and subsisting" and has not been "terminated" concede that Music City was and is still authorized to sell CDs to Concord and others. (First Amended Complaint, ¶ 128, Dkt. 20). As in *Quanta*, nothing in the License Agreement restricts Music City's sale of CDs to Concord, although the License Agreement does provide remedies to Philips, including early termination of the License Agreement, for alleged breach. So long as the License Agreement was not terminated, Music City's right to sell was unconditional, and, indeed, was expressly provided for in article 2.01 of the License Agreement. (First Amended Complaint, Exhibit M at p. 5, Dkt. 20). Because Philips authorized Music City to make and sell the CD-Discs that allegedly embody one or more of the inventions claimed in the patent-in-suit and were sold by Music City to Concord, Philips is now prevented by the doctrine of patent exhaustion "from further asserting its patent rights with respect to the patents substantially embodied by those products." *Quanta*, 128 S. Ct. at 2122.

It is irrelevant to Philips's patent infringement claim against Concord that Philips is alleging breach of the License Agreement by Music City. By Philips's own allegation in the First Amended Complaint, the License Agreement has been "valid and subsisting" since July 1, 2002. (First Amended Complaint at ¶ 128, Dkt. 20). The issue is merely whether the sales to Concord by Music City were authorized at the time they were made, which they clearly were under article 2.01 of the License Agreement. According to the allegations in the Complaint, Music City was never divested of its right to make and sell CD-Discs under the '846 patent-in-suit. The alleged failure by Music City to comply with post-sale reporting and royalty requirements to Philips, if true, is irrelevant vis-à-vis Concord because Philips's rights, if any, were exhausted at the time of the authorized sales under the License Agreement. *Quanta*, 128 S. Ct. at 2122.

## III.   CONCLUSION

Philips's patent rights in the CD-Discs that Philips's licensee, Music City, sold to Concord were exhausted at the time of the sale. Although Philips has alleged that post sale contractual obligations have not been met, the fact remains that the sales were authorized at the time they were made. Accordingly, Philips's patent infringement claims against the Concord must fail as a matter of law and should be dismissed in their entirety.

Because Count II of the First Amended Complaint fails to state a claim upon which relief can be granted against Concord under any viable legal theory, Concord respectfully request that their motion to dismiss be granted.

Dated: New York, New York
       August 13, 2008

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

By: /s/ Abigail M. Kagle

  Abigail M. Kagle (AK 1527)
  MANATT, PHELPS & PHILLIPS, LLP
  7 Times Square
  New York, NY 10036
  Tel: (212) 790-4500
  Fax: (212) 790-4545
  akagle@manatt.com

  Robert D. Becker (CA Bar No. 160648)
  Shawn G. Hansen (CA Bar No. 197033)
  MANATT, PHELPS & PHILLIPS, LLP
  1001 Page Mill Road, Building 2
  Palo Alto, CA 94304
  Tel: (650) 812-1300
  Fax: (650) 213-0260
  rbecker@manatt.com
  shansen@manatt.com

  *Attorneys for Defendants*
  CONCORD RECORDS, INC. and
  CONCORD MUSIC GROUP, INC.

## TABLE OF CONTENTS

                                                                                                                      **Page**

I.     BACKGROUND ................................................................................................... 2

II.    ARGUMENT ....................................................................................................... 4

         A.     The Applicable Standard........................................................................... 4

         B.     Philips's Patent Infringement Claim Against Concord Should Be Dismissed Because The Sale of The CD-Discs From Music City to Concord Exhausted Philips's Patent Rights............................................. 5

III.   CONCLUSION .................................................................................................... 8

## TABLE OF AUTHORITIES

Page

### CASES

*ATSI Communs. Inc. v. Shaar Fund, Ltd,*
   493 F.3d 87 (2d Cir. 2007) ................................................................................................... 5

*Bell Atl. Corp. v. Twombly,*
   127 S.Ct. 1955 (2007) ........................................................................................................... 5

*Electronics Communications Corp. v.* Toshiba *Am. Consumer Prods.,*
   129 F.3d 240 (2d Cir. 1997) ................................................................................................... 4

*Intel Corp. v. U.S. Int'l Trade Comm'n,*
   946 F.2d 821 (Fed. Cir. 1991) ............................................................................................... 6

*Intel Corp. v. ULSI Corp.,*
   995 F.2d 1566 (Fed. Cir. 1993), *cert. denied*, 510 U.S. 1092 (1994) ................................... 6

*Quanta Computer, Inc. v. LG Electronics, Inc.*,
   553 U.S. __, 128 S. Ct. 2109 (June 9, 2008) ................................................................... 6, 7

### RULES

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 2, 4, 5