```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------

Koninklijke Philips Electronics N.V., et al.,

                    Plaintiffs,

    -against-

The ADS Group, et al.                          08 Civ 04068 (RGS)

Entertainment Distribution
Company (USA) LLC, et al.                      08 Civ 04070 (RGS)

Optical Experts, et al.                        08 Civ 04071 (RGS)


ORDER

-----------------------------------
```

**RICHARD G. STEARNS, United States District Judge.**[1]

This breach of contract and patent infringement action brought by Koninklijke Philips Electronics N.V. and U.S. Philips Corporation (collectively, Philips) against a number of CD replicator companies, including the ADS Group (ADS), Zomax Incorporated (Zomax), Entertainment Distribution Company (USA) LLC (EDS), and Optical Experts Manufacturing, Inc. (OEM), arises out of a dispute over the scope of various License Agreements and Side Letters (the Agreements) entered between each of the defendant replicators and Philips. The Agreements pertain to a Sony/Philips

---

[1] Of the District of Massachusetts, sitting by designation.

patent pool asserting ownership rights over the manufacture of CD-Audio Discs, CD-ROM Discs, and other CD formats (CDs). Included in the pool is the patent-in-suit, U.S. Patent No. 5,068,846 (the '846 Patent).[2]

In addition to the replicator companies, Philips has named as defendants various of the companies' officers and directors, as well as Hudson Valley Capital Partners, Inc. (Hudson Valley), a venture capital firm that has an ownership interest in ADS. All of the individual defendants and Hudson Valley (collectively, the MTD defendants) move for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).[3] A hearing on the motions was held in the Southern District of New York on September 10, 2009. For the reasons stated at the Markman hearing on December 2, 2009,

---

[2] Philips filed five related cases in the Southern District of New York. This motion, however impacts only three of these cases. The cases and the associated defendant replicators are 08-cv-4068: The ADS Group, American Media International, Ltd., Zomax Incorporated, Metatec International, Inc., and Music City Optical Media, Inc.; 08-cv-4070: Entertainment Distribution Company (USA) LLC, Entertainment Distribution Company, and UMG Manufacturing & Logistics, Inc.; and 08-cv-4071: Optical Experts Manufacturing, Inc.

[3] The motions to dismiss were filed in 08-cv-4068 by John Edgar Moll and John Steven Moll (the Molls) (Dkt. #27), Jean A. Lagotte, Jr., and Hudson Valley Capital Partners, Inc. (Dkt. #133), Michael F. Hardwick (Dkt. #141), and Arun Khurana and David A. Silvon (Dkt. #143). In 08-cv-4070, a motion was filed by James Caparro and Jordan Copland (Dkt. #57); and in 08-cv-4071, a motion was filed by Raymond Bernard Zerrusen and Clifford Steven Boyd (Dkt. #63). Philips voluntarily dismissed Khurana and Silvon as defendants on November 25, 2009. See 08-cv-4068, Dkt. #181.

the motions to dismiss were ALLOWED in an Order entered on January 22, 2010.[4]

## BACKGROUND

The MTD defendants are not themselves CD replicators or signatories to the Agreements, but are corporate officers and directors of the replicator defendants (and in one instance, an investment partnership). The MTD defendants argue that Philips has failed to allege plausible facts sufficient to justify the extraordinary equitable remedy of corporate veil-piercing, without which the MTD defendants cannot be held liable on theories of patent infringement or breach of contract. The MTD defendants also contend that if the Agreements are valid and enforceable (as the court has ruled), it follows that they cannot be held to infringe a patent that they are licensed to practice.[5] Philips asserts the following claims against the MTD defendants.

1. <u>Direct Patent Infringement</u>

Philips alleges that the MTD defendants are intimately

---

[4]At the <u>Markman</u> hearing, the court orally stated the substance of its decision. The dismissals were formalized in an Order issued on January 22, 2010. This Memorandum explains at greater length the rationale underlying that Order. The court inadvertently omitted the Molls and Hardwick from the January 22, 2010 Dismissal Order.

[5]The MTD defendants rely on the earlier March 26, 2009 Order of the court finding that the Agreements are valid and enforceable. They argue that the finding precludes Philips from suing simultaneously (and inconsistently) for breach of the Agreements and for patent infringement.

involved in the day-to-day operations and management of the replicator companies. As controlling persons, the MTD defendants are alleged to have authorized and condoned the replicator defendants' infringing activities. Moreover, the MTD defendants are said to have willfully directed the replicator defendants to refrain from paying Philips the royalties that it was owed under the Agreements. These allegations, Philips contends, are sufficient to support a piercing of the corporate veil.

2. Active Inducement of Patent Infringement

Philips argues that this claim can be sustained without the necessity of veil-piercing. The Amended Complaint alleges that the MTD defendants knew that their actions would result in the manufacture and sale of infringing CDs by the replicator companies. Philips contends that this allegation is sufficient to satisfy the "plain and short statement" requirement of Fed. R. Civ. P. 8(a)(2).

3. Active Inducement of Breach of Contract

Philips alleges that the MTD defendants exploited their domination of the replicator defendants to induce breaches of the Licensing Agreements. In this regard, Philips relies on the prior allegations advanced in support of a piercing of the corporate veil.

4. Summary

The court will find: (1) that Philips is not required at the nonce to make an election between its infringement and breach of

4

contract claims; (2) that Philips' claims against the MTD defendants are insufficiently pled to sustain its active inducement of patent infringement claim; (3) that the pleadings are insufficient to support a piercing of the corporate veil; and as a result (4) the claims of direct patent infringement and active inducement of breach of contract also fail.

## DISCUSSION

### Standing

As an initial matter, the court will address the issue of whether Philips is barred as a matter of law from prosecuting claims of infringement of the '846 Patent by reason of the court's March 26, 2009 Memorandum and Order. The MTD defendants argue that as a result of the court's holding that the Agreements are "valid and subsisting," they cannot as licensees infringe the '846 Patent as a matter of law. See Boynton v. Headwaters, Inc., 243 F. App'x 610, 614-615 (6th Cir. 2007)(the holder of a valid license cannot be a direct infringer of a patent, nor by extension can it induce its infringement). See also Lisle Corp. v. Edwards, 599 F. Supp. 897, 900 (S.D. Iowa 1984)(permanently enjoining a patent owner from asserting infringement claims against defendants who manufactured and sold patented goods under a valid license), aff'd, 777 F.2d 693 (Fed. Cir. 1985). Cf. Fairchild Semiconductor Corp. v. Third Dimension (3D) Semiconductor, Inc., 589 F. Supp. 2d 84, 87-88 (D. Maine 2008)(where a valid license is in effect, an aggrieved patent

holder-licensor may seek only an accounting of unpaid royalties).

Philips counters with a material distinction of fact: the licensees in Boynton and Lisle had continued to make royalty payments despite their objections to the validity of the patents in suit. Philips further distinguishes Fairchild by arguing that the plaintiff in that case had covenanted not to bring infringement claims against the licensee so long as the License Agreement remained in effect, even if - as happened - a dispute arose over the scope of the coverage of the patents. As Philips points out, there is no similar covenant in this case.[6] While the MTD defendants maintain that no royalties are owed if the '846 patent has not been infringed, Philips counters that nothing in the Agreements prevents it from asserting that infringing activity has

---

[6]Philips maintains that it promised not to sue for infringement only with respect to those CD-Discs that were duly reported and on which royalties were paid. Stated another way, Philips argues that it "does not grant licenses to manufacture and sell 'CD-Discs' per se. Rather, it grants licenses to manufacture and sell 'Licensed Products.'" Philips Rebriefed Opp'n at 15. Defendants' responsive argument characterizes Philips' contention as the assertion of an "advanced payment" licensing scheme under which Philips claims the right to sue for infringement in the interval between the sale of a CD and the payment of the royalty. At first glance, Philips' argument that the Agreements allow it to demand royalties on all CD-Discs that are not "duly reported" would seem to either concede the MTD defendants' election argument or to suggest that defendants have the burden of proving that unreported CDs are not infringing. See Model Jury Instructions: Patent Litigation, 2005 A.B.A. Sec. Litigation 52 ("The patent owner has the burden of proving infringement by a preponderance of the evidence."). Nonetheless, the merits of the respective arguments and the scope of Philips' remedies under its contract and infringement claims is a matter better left to summary judgment.

in fact occurred. Finally, Philips argues that the MTD defendants' breach of the Agreements has had the effect of working their termination, thus clearing the way for this lawsuit.

The MTD defendants characterize, correctly, the court's March 26, 2009 Order as holding that Philips is a proper plaintiff in this case by virtue of the licensing authority that the parent company Koninklijke had been granted by its subsidiary U.S. Philips. See <u>Koninklijke Philips Elecs. N.V. v. Cinram Int'l, Inc.</u>, 603 F. Supp. 2d 735, 739-740 (S.D.N.Y. 2009). The court did not, however, hold that Philips was required as a result to make an election between patent infringement and breach of contract remedies, or that it had waived the infringement claims by asserting standing to prosecute the claims of breach of contract. It is not unusual, nor is it untoward, especially at the early stages of litigation, for a plaintiff to advance inconsistent theories or causes of action. See <u>Henry v. Daytop Vill., Inc.</u>, 42 F.3d 89, 95 (2d Cir. 1994), citing Fed. R. Civ. P. 8(e)(2). <u>Cf</u>. <u>Aetna Cas. Sur. Co. v. P & B Autobody</u>, 43 F.3d 1546, 1555 (1st Cir. 1994).

<u>Applicable Legal Standard</u>

In considering a motion to dismiss under Fed. R. Civ. P. 12(c) (or Rule 12(b)(6)), the court must accept "all factual allegations in the complaint and [draw] all reasonable inferences in the

plaintiff's favor."[7] <u>ATSI Commcn's, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007). However, to survive a motion to dismiss under even this indulgent standard, a complaint must allege "a plausible entitlement to relief." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 559 (2007), disavowing <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957). <u>See</u> <u>also</u> <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555 (internal citations and quotations omitted).

<u>Corporate Veil-Piercing</u>

As a rule, the corporate form is accorded great respect and is set aside only when necessary to avoid a manifestly inequitable result. Under New York law, "[t]he party seeking to pierce a corporate veil [must] make a two-part showing: (i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to

---

[7] A motion to dismiss brought after a complaint is answered is appropriately treated as a motion for judgment on the pleadings. Rule 12(c) permits a party to move for judgment on the pleadings at any time "[a]fter the pleadings are closed," as long as the motion does not delay the trial. Fed. R. Civ. P. 12(c). A Rule 12(c) motion differs from a Rule 12(b)(6) motion in that it implicates the pleadings as a whole as opposed to simply the complaint and its attachments. <u>See</u> 5 Charles A. Wright, et al., <u>Federal Practice & Procedure</u>, §§ 1367, 1368 (2d ed. 1995).

commit a fraud or wrong that injured the party seeking to pierce the veil." Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997), quoted in MAG Portfolio Consult, GmbH v. Merlin Biomed Group LLC, 268 F.3d 58, 63 (2d Cir. 2001). See also Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 137 (2d Cir. 1991) ("[T]o pierce the corporate veil, the parent corporation must at the time of the transaction complained of . . . have exercised such control that the subsidiary 'has become a mere instrumentality' of the parent, which is the real actor.") (quoting Lowendahl v. Baltimore & Ohio R.R. Co., 247 A.D. 144, 157 (1st Dept.)(1936), aff'd, 272 N.Y. 360 (1936)); Gartner v. Snyder, 607 F.2d 582, 586 (2d Cir. 1979) ("Because New York courts disregard corporate form reluctantly, they do so only when the form has been used to achieve fraud, or when the corporation has been so dominated by an individual or another corporation . . . and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego."); Novak v. Scarborough Alliance Corp. 481 F. Supp. 2d 289, 293 (S.D.N.Y. 2007) ("Generally, '[a] director [or officer] of a corporation is not personally liable to one who has contracted with the corporation on the theory of inducing a breach of contract, merely due to the fact that, while acting for the corporation, he has made decisions and taken steps that resulted in the corporation's promise being broken.'") (quoting Murtha v.

Yonkers Child Care Ass'n, Inc., 45 N.Y.2d 913, 915 (1978)).

New York courts have looked to the following factors in analyzing the domination and control element:

> (1) [whether corporate formalities are observed], (2) [whether the capitalization is adequate], (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) [whether there is] overlap in ownership, officers, directors, and personnel, (5) [whether the corporate entities share] common office space, address and telephone numbers[], (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the [alleged dominator] deal[s] with the dominated corporation at arms length, (8) whether the corporation[] [is] treated as [an] independent profit center[], (9) [whether others pay] or guarantee [] debts of the dominated corporation[], and (10) whether the corporation in question had property that was used by [the alleged dominator] as if it were [the dominator's] own.

Wm. Passalacqua Builders, 933 F.2d at 139.

Philips' case for corporate domination and control consists of the following allegations: (1) that the individual defendants are officers or directors of the replicator companies; (2) that the individual defendants were "actively involved in the control and management" of the replicator companies; and (3) that the individual defendants were therefore the "alter ego[s]" of the replicator companies. As the MTD defendants point out, none of these assertions bridge the gap separating mere allegation from fact. Virtually identical conclusory allegations were rejected in Zinaman v. USTS New York, Inc., 798 F. Supp. 128 (S.D.N.Y. 1992), a pre-Twombly case. In Zinaman, plaintiff alleged that USTravel was the "alter ego" of defendant USTS New York, Inc. However, the

10

complaint alleged only that US Travel "owned and controlled" USTS.

> Zinaman does not allege that USTS was controlled and dominated to such an extent that it "had no existence of its own." . . . Moreover, Zinaman makes no reference to the factors typically considered in applying the alter ego theory, such as the absence of formalities in corporate decision making, and inadequate capitalization. Hence, Zinaman's allegations fail to plead the "control and domination" necessary to justify bringing the USTravel into this dispute (internal citations omitted).

Id. at 132.

Philips argues that its allegations are "better developed" and that Zinaman can be distinguished because of the heightened pleading requirements that attach to fraud-based claims. The distinction, however, matters little because the second element of Philip's alter ego theory requires a showing that the alleged domination was used "to commit fraud or other injurious wrong." See EED Holdings v. Palmer Johnson Acquisition Corp., 228 F.R.D. 508, 512 (S.D.N.Y. 2005) ("[W]here a veil-piercing claim is based on allegations of fraud, 'the heightened pleading standard of Rule 9(b) is the lens through which those allegation[s] must be examined.'") (quoting In re Currency Conversion Fee Antitrust Litig., 265 F. Supp. 2d 385, 425 (S.D.N.Y. 2003)).[8]

---

[8]Philips also argues that patent claims are not subject to the heightened pleading requirement governing claims of fraud. Philips relies heavily on the holding of McZeal v. Sprint Nextel Corp., 501 F.3d 1354 (Fed Cir. 2007). The decision in McZeal, however, was motivated by a (perhaps) misplaced indulgence of the pleadings of a pro se plaintiff. See id. at 1356. Of greater relevance, McZeal was decided before the Iqbal decision made clear that Twombly's heightened pleading standard applied in all cases, not merely those like Twombly that assert antitrust violations.

11

Active Inducement of Infringement[9]

A claim of active inducement of patent infringement does not, according to Philips, require corporate veil-piercing as a predicate for liability.[10] See 35 U.S.C. § 271(b) ("Whoever actively induces infringement of a patent shall be liable as an infringer."). Whether or not Philips' assertion is accurate, personal liability does not attach absent a showing that a defendant not only knew of the infringement but also engaged in culpable conduct with the specific intent of encouraging the direct infringer's activities. DSU Med. Corp. v. JMS Co., Ltd., 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc, in relevant part adopting the holding of Manville Sales Corp. v. Paramount Sys., Inc., 917 F.2d 544, 553 (Fed. Cir. 1990)). ("It must be established that the defendant possessed specific intent to encourage another's infringement and not merely that the defendant had knowledge of the

---

[9]The rejection of the veil-piercing claim necessarily entails a rejection of the claims of inducement of breaches of the Licencing Agreements. Philips concedes that veil-piercing is a necessary element of the claims of direct infringement and inducement of breach of contract.

[10]The MTD defendants do not necessarily agree, pointing to the surprising dearth of case law. But see Manville Sales Corp. v. Paramount Sys., Inc., 917 F.2d 544, 553 (Fed. Cir. 1990) ("[C]orporate officers who actively assist with their corporation's infringement may be personally liable for inducing infringement *regardless* of whether the circumstances are such that a court should disregard the corporate entity and pierce the corporate veil.") (emphasis in original). However, given that the court finds that Philips' pleading on the inducement of infringement claim does not meet the standard of Manville Sales, this issue need not be decided.

12

acts alleged to constitute infringement."). The Amended Complaint alleges only that defendants "personally, actively, and knowingly controlled and directed" the replicator defendants in producing CD-Discs that infringed the '846 Patent. Compare Fuji Mach. Mfg. Co. v. Hover-Davis, Inc., 936 F. Supp. 93, 95-96 (W.D.N.Y. 1996) (inducement claim sufficient to survive motion to dismiss where plaintiff asserted that defendant sold parts and aided and encouraged purchasers to use them in the combinations and processes covered by the patent and that defendant had actual notice of the patent and deliberately and willfully committed the infringing activities); Zenith Elecs. Corp. v. ExZec, Inc., No. 93 C 5041, 1994 WL 444804, at *2 (N.D. Ill. Aug. 15, 1994) (inducement claims against alleged infringer's president sufficient to survive motion to dismiss where plaintiff alleged that the president personally, willfully, and wantonly infringed plaintiff's patents through his own promotion of the allegedly infringing product). Unlike these and other cases cited by Philips, the Amended Complaints do not allege facts permitting the conclusion that the MTD defendants acted culpably, with the *specific intent* of inducing infringement, a necessary element of an inducement claim.

### ORDER

For the foregoing reasons, the MTD defendants' motions to dismiss are <u>ALLOWED</u>. This decision applies to the following actions: 08-cv-4068 (Dkt. #s 27, 133, and 141); 08-cv-4070 (Dkt.

#57), and 08-cv-4071 (Dkt. #63).[11]

SO ORDERED.

Dated: March 12, 2010

/s/ Richard G. Stearns
_____
Richard G. Stearns
United States District Judge

---

[11]The court notes that the decision on the MTD defendants' motions to dismiss was deferred (as Philips requested) until after the January 15, 2010 cutoff date for discovery expired. Philips did not ask leave to further amend the Complaints to conform their allegations to the Twombly-Iqbal requirements.